**SO ORDERED.**

**SIGNED this 28 day of April, 2017.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

IN RE:                                                            CASE NO. 16-02761-5-DMW

RODERICK ANTONIO DAVIS
                                                                           CHAPTER 13
       DEBTOR

ORDER DENYING APPLICATION FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES PURSUANT TO 11 U.S.C. § 506(b)

This matter comes before the court upon the Application for Allowance and Payment of Compensation and Reimbursement of Expenses Pursuant to 11 U.S.C. § 506(b) ("Application") filed by Wayne County and the City of Goldsboro (collectively "Applicants") on March 14, 2017 and the Response thereto filed by Roderick Antonio Davis ("Debtor") on April 6, 2017.  On April 18, 2017, the Applicants filed a Memorandum in support of the Application.

The court conducted a hearing on April 19, 2017 in New Bern, North Carolina.  Joseph Z. Frost, Esq. appeared for the Applicants, Cort Walker, Esq. appeared for the Debtor, and Chapter 13 trustee Joseph A. Bledsoe III, Esq. ("Trustee") appeared on behalf of the estate.  Based upon the court record, pleadings, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1.  The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code ("Code")[1] on May 24, 2016, and the court appointed the Trustee to administer the case pursuant to 11 U.S.C. § 1302.

2.  The Debtor's Statement of Financial Affairs for Individuals Filing for Bankruptcy filed on June 13, 2016 discloses that from January, 2012 to the present, the Debtor has owned at least five percent (5%) of Advanced Management Enterprise, Inc. ("AME").

3.  Prior to the Debtor's bankruptcy petition, the Applicants obtained tax liens by operation of N.C. Gen. Stat. § 105-355(a) upon the following real properties ("Properties") owned by AME and located in Wayne County, North Carolina:

    a.  108 North James Street, Goldsboro, North Carolina ("108 James");

    b.  412 North Carolina Street, Goldsboro, North Carolina ("412 Carolina");

    c.  113 North James Street, Goldsboro, North Carolina ("113 James");

    d.  115 North James Street, Goldsboro, North Carolina ("115 James");

    e.  300 Olivia Lane, Goldsboro, North Carolina ("300 Olivia"); and

    f.  707 East Pine Street, Goldsboro, North Carolina ("707 Pine").

4.  In 2016, the Applicants initiated the following civil proceedings ("Foreclosure Actions") against AME and other named defendants in the Wayne County District Court pursuant to N.C. Gen. Stat. § 105-374:

    a.  *Wayne Co. v. Advanced Mgmt. Enter., Inc.*, File No. 16-CVD-35, seeking foreclosure of the Applicants' tax liens on 108 James and 412 Carolina;

---

[1] Except within formal citations, references to the Code, 11 U.S.C. § 101 *et seq.*, will be made by section number only.

      b.    *Wayne Co. v. Advanced Mgmt. Enter., Inc.*, File No. 16-CVD-36, seeking foreclosure of the Applicants' tax liens on 113 James and 115 James; and

      c.    *Wayne Co. v. Advanced Mgmt. Enter., Inc.*, File No. 16-CVD-59, seeking foreclosure of the Applicants' tax liens on 300 Olivia and 707 Pine.

5.    On April 4, 2016, the Wayne County District Court entered a Judgment in each of the Foreclosure Actions. The Judgments ("Tax Judgments")[2] ordered the Properties foreclosed of AME's interest to the extent of the Applicants' tax liens and appointed a commissioner to sell the Properties. The Tax Judgments adjudicated the values of the tax liens as follows:

      a.    $4,145.27 upon 108 James;

      b.    $5,807.73 upon 412 Carolina;

      c.    $1,189.56 and upon 113 James;

      d.    $1,541.45 upon 115 James;

      e.    $1,383.55 upon 300 Olivia; and

      f.    $1,110.59 upon 707 Pine.

6.    Each of the Tax Judgments contains the following provision:

> The court further orders that a reasonable Commissioner's fee not to exceed five percent (5%) of the purchase price, reasonable attorney's fee, in the amount $1,500.00, as set forth in the Complaint, along with all costs that have been incurred since the filing of this action be recovered by the [Applicants].

7.    On May 5, 2016, the Applicants filed notices that the Properties would be offered for foreclosure sale to the highest bidder on May 26, 2016.

8.    On the day prior to the Debtor's bankruptcy petition, pursuant to quitclaim deeds dated May 21, 2016 and recorded with the Wayne County Register of Deeds on May 23, 2016,

---

[2] Copies of the Tax Judgments are attached to the Applicants' Proof of Claim, Claim Number 5, filed on October 27, 2016.

3

AME transferred the Properties, subject to the Tax Judgments, to the Debtor. As a result of these transfers, when the Debtor filed his bankruptcy petition on May 24, 2016, the Properties became property of the estate pursuant to § 541, and the scheduled foreclosure sales of the Properties were stayed by § 362.

9. In his Schedule A/B: Property filed on June 13, 2016, the Debtor valued the Properties as follows:

    a.     $38,000.00 for 108 James;

    b.     $58,000.00 for 412 Carolina;

    c.     $9,000.00 for 113 James;

    d.     $25,000.00 for 115 James;

    e.     $53,000.00 for 300 Olivia; and

    f.     $28,000.00 for 707 Pine.

Also on June 13, 2016, the Debtor filed a Chapter 13 Plan which proposes to treat each of the Applicants' claims against the Properties as fully secured and to pay the claims through the life of the sixty month plan with nine percent (9%) interest. The Debtor filed a Chapter 13 Plan—Amended on September 13, 2016 which contains amendments not relevant to the Applicants' claims.

10. On October 27, 2016, the Applicants filed a Proof of Claim, Claim Number 5 ("Claim"), for taxes, costs, expenses, and commissioner fees in the total amount of $23,289.24 due collectively under the Tax Judgments on the date of the Debtor's petition. Question 8 of the Proof of Claim form asks "What is the basis of the claim?" In response, the Applicants indicated that the Claim arose from "Tax Lien Judgments entered by Wayne County District Court."

11. On June 6, 2016, the Applicants filed a Motion for Order Dismissing Chapter 13 Case or, in the Alternative, Granting Relief from the Automatic Stay and Codebtor Stay ("Stay Motion"). In the Stay Motion, the Applicants requested the court to dismiss with prejudice the Debtor's bankruptcy proceeding, or alternatively, to grant the Applicants relief from the automatic stay pursuant to § 362(d) to allow the Applicants to exercise their rights under the Tax Judgments and proceed with sales of the Properties. The Applicants also requested the court to award them reasonable attorneys' fees and costs incurred in connection with the Stay Motion.

12. The Debtor opposed the Stay Motion, and the parties ultimately resolved the matter pursuant to a Consent Order Regarding Motion for Order Dismissing Chapter 13 Case or, in the Alternative, Granting Relief from the Automatic Stay and Codebtor Stay ("Consent Order") entered by the court on March 1, 2017. The Consent Order conditions the continuance of the automatic stay upon, among other things, the Debtor making timely plan payments to the Trustee and upon the Debtor's agreement to—

> [t]reat the Secured Claim of Wayne County as fully secured by the Properties and agree that it shall be entitled to post-petition interest and other costs and expenses pursuant to § 506 of the Bankruptcy Code and North Carolina General Statute § 105 *et al.*, upon proper application and allowance by the Court.

*In re Davis*, Case No. 16-02761-5-DMW (Bankr. E.D.N.C. Mar. 1, 2017).

13. In the Application, the Applicants request the court to approve allowance of post-petition incurred attorneys' fees in the amount of $7,346.00 and expenses in the amount of $483.68 (collectively "Fees"), to be included as part of the Applicants' Claim pursuant to § 506(b). The Fees relate to representation in the Debtor's Chapter 13 proceeding, particularly prosecution of the Stay Motion and negotiation of the Consent Order.[3] In his Response, the Debtor opposes inclusion

---

[3] Copies of invoices detailing the Fees are attached to the Application as "Exhibit 1."

5

of the Fees as part of the Claim, asserting that the Fees were not provided for under an agreement between the parties or a State statute within the meaning of § 506(b).

## CONCLUSIONS OF LAW

### Jurisdiction

14. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O). *See*, *e.g.*, *In re Ward*, 190 B.R. 242, 243 (Bankr. D. Md. 1995) (application for allowance of attorneys' fees and expenses under § 506(b) is a core proceeding). The court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334 and the authority to hear this matter pursuant to the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

### Section 506(b) Analysis

15. Consideration of the Application is governed by § 506(b), the only section of the Code that expressly authorizes a creditor to be reimbursed for post-petition attorneys' fees as part of its secured claim. *In re Constr. Supervision Servs., Inc.*, Case No. 12-00569-8-SWH, 2015 WL 4873062, at *4 (Bankr. E.D.N.C. Aug. 13, 2015). Specifically, section 506(b) provides that—

> [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b). Section 506(b) is an exception to the general rule contained within § 502 that claims are determined as of the date of the petition and "permits a party to bring a claim for fees, costs, or charges incurred postpetition, *provided that the party bringing the claim is an oversecured creditor*." *Ins. Co. of N. Am. v. Sullivan*, 333 B.R. 55, 61 (D. Md. 2005) (emphasis in original).

6

16. Four requirements must be met in order for a creditor to be entitled to post-petition attorneys' fees, costs, and expenses:

> (1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount.

*In re Sun 'N Fun Waterpark LLC*, 408 B.R. 361, 366 (B.A.P. 10th Cir. 2009) (citations omitted); *accord In re Bate Land & Timber, LLC*, 541 B.R. 601, 605-06 (Bankr. E.D.N.C. 2015) (citations omitted) (holding that a creditor seeking allowance of § 506(b) fees and costs must show that the creditor is oversecured, the underlying agreement provides for such fees and costs, and the fees and costs are reasonable).

*The Applicants' Claim is an Allowed Secured Claim*

17. The Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is *deemed allowed*, unless a party in interest . . . objects." 11 U.S.C. § 502(a) (emphasis added). Neither the Debtor, the Trustee, nor any other party in interest objected to the allowance of the Applicants' Claim or to the secured status of the Claim; therefore, the Claim is an allowed secured claim in the case.

*The Applicants' Claim is Oversecured*

18. There is no dispute that the Claim is oversecured by the Properties, and the parties expressly agreed within the Consent Order that the Claim is oversecured. This determination was adjudicated by the court's entry of the Consent Order and has a *res judicata* effect upon consideration of the Application; therefore, the court easily holds that the Claim is oversecured for purposes of § 506(b).

*The Applicants' Claim Did Not Arise from an Agreement or State Statute
That Provides for Collection of Attorneys' Fees and Expenses*

19. The crux of whether the Fees should be allowed as part of the Applicants' Claim hinges upon whether the Claim arose from an agreement or State statute that allows for recovery of attorneys' fees and expenses. The Applicants first assert that the Consent Order qualifies as such an agreement, thus the Debtor's execution of the Consent Order precludes him from opposing the Application under the doctrines of law of the case, equitable estoppel, quasi-estoppel, judicial estoppel, and waiver. Alternatively, the Applicants contend that collection of the Fees is authorized by N.C. Gen. Stat. § 105-374, the North Carolina statute under which the Tax Judgments were obtained.

20. In 1989, the United States Supreme Court analyzed the language of § 506(b), which at the time did not include the term "State statute" and only allowed for interest on a claim and for reasonable fees, costs, or charges provided for in the agreement under which such claim arose. The Supreme Court held that—

> [r]ecovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and *provided for in the agreement under which the claim arose*. Therefore, in the absence of an agreement, postpetition interest is the only added recovery available.

*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (emphasis added). The Applicants' Claim did not arise from the Consent Order but from the Tax Judgments, which are nonconsensual adjudications and contain no agreements by the Debtor or AME. The parties agreed to the terms of the Consent Order entered by the court post-petition, and the Claim, which existed at the time of the Debtor's petition, could not have arisen out of this post-petition agreement.

21. The Applicants likened the Consent Order to an agreement executed in exchange for a forbearance of rights in executing on a judgment or otherwise seeking collection of an indebtedness, citing cases holding that a forbearance agreement providing for payment of attorneys' fees was an agreement under which the claim arose for purposes of § 506(b). Each of the cited cases involves a pre-petition agreement which is distinguishable from the nature of the Consent Order.

22. *In re Dumond*, 158 B.R. 309 (Bankr. D. Me. 1993) presents facts similar to the case *sub judice* in that the original indebtedness arose from a state court judgment. Upon the state court's issuance of a writ of execution, the debtor did not satisfy the judgment but entered into a consensual agreement with the judgment creditor setting forth payment terms for the amount due under the judgment and providing for payment of attorneys' fees and expenses. *Id.* at 309. Subsequently, the debtor could not meet the agreed upon terms of payment and filed for Chapter 11 relief. *Id.* at 310. The court found that the creditor's claim in the bankruptcy proceeding arose from the consensual post-judgment agreement and not from the original judgment creating the debt and allowed the creditor's attorneys' fees under § 506(b). *Id.* at 310-11.

23. The *Dumond* reasoned that consistent with principles of the doctrine of merger, if the creditor attempted to collect its debt in state court, then it would have to proceed under the terms of the consensual agreement. *Id.* at 311. The court restated the explanation of the doctrine of merger given by the United States District Court for the Southern District of Ohio as follows:

> The doctrine of merger is one aspect of the larger principle of *res judicata*. The general rule of merger is that when a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot maintain a subsequent action on any part of the original claim. The original claim merges into the final judgment. The effect of the merger is that the old debt ceases to exist and the new judgment debt takes its place. The judgment becomes "the evidence of the debt, or the sole test of the rights of the parties...."

9

*Id.* at 310 (quoting *Matter of Schwartz,* 77 B.R. 177 (Bankr. S.D. Ohio 1987), *aff'd,* 87 B.R. 41 (S.D. Ohio 1988) (quoting *In re Schlecht,* 36 B.R. 236 (Bankr. D. Alaska 1983) (other citations omitted)). Applying the doctrine of merger a step forward, the court concluded that—

> [g]iven the comprehensive nature of the agreement, it is clear that once the parties entered into the [agreement], that instrument supplanted the terms of the judgment and writ of execution, thereby providing [the creditor] with an independent basis to claim against the Debtor.

*Id.*

24. In *In re Smith*, 463 B.R. 756 (Bankr. E.D. Pa. 2012), the United States Bankruptcy Court for the Eastern District of Pennsylvania applied the doctrine of merger to a consensual forbearance agreement in a different manner than in *Dumond*, reaching the same end result. In *Smith*, the creditor obtained an *in rem* foreclosure judgment against the debtor which contained different interest and cost terms than the underlying mortgage loan documents. *Id.* at 759-60. Prior to a scheduled foreclosure sale, the parties entered into a consent agreement for postponement of the sale. In this agreement, the debtor confirmed the judgment and agreed to additional interest and additional recoverable costs provided for in the original mortgage. *Id.* at 760. The court recognized that under Pennsylvania law, the terms of the mortgage loan documents were merged into the judgment, and the mortgage no longer provided a basis for determining the rights and obligations of the parties; however, by entering into the post-judgment consent agreement, the debtor effectively waived the benefits of the of the merger doctrine and reaffirmed the terms of the judgment as well as the original mortgage. *Id.* at 761-61. The court concluded that the consent agreement was the applicable contract for purposes of § 506(b). *Id.* at 765.

25. While on the surface, *Dumond* and *Smith* seem to support the Applicants' position that the Consent Order qualifies as a forbearance agreement under which the Claim arose, the Consent Order was entered into post-petition and while the automatic stay of § 362 prevented the

10

Applicants from having any collection rights which they could forbear. Had the Applicants continued pursuit of their Stay Motion, it is unlikely the court would have freely granted relief given their equity cushion. The Consent Order appropriately conditions the continuance of the automatic stay upon the Debtor's performance under his proposed Chapter 13 plan and other adequate protection, with treatment of the Applicants' Claim reserved for confirmation of the plan. The Consent Order does not represent an agreement renegotiating the Applicants' rights which can be considered the basis for the Applicants' Claim.

26.     Assuming *arguendo* that the Consent Order was an agreement under which the Applicants' Claim arose, the Debtor does not agree within the Consent Order to payment of the Applicants' attorneys' fees and expenses. As previously set forth within the Findings of Fact section of this Order, the Debtor agrees within the Consent Order to—

> [t]reat the Secured Claim of Wayne County as fully secured by the Properties and agree that it shall be entitled to post-petition interest and other costs and expenses pursuant to § 506 of the Bankruptcy Code and North Carolina General Statute § 105 *et al.*, upon proper application and allowance by the Court.

*In re Davis*, Case No. 16-02761-5-DMW (Bankr. E.D.N.C. Mar. 1, 2017. The court interprets this provision to be merely an agreement that the Claim is oversecured for purposes of § 506(b). The Applicants are entitled only to any "post-petition interest and other costs and expenses" that otherwise qualify for inclusion in an oversecured claim under § 506(b), thus the requirement of "upon proper application and allowance by the Court." More importantly, unlike the language of § 506(b) which provides for allowance of entitled interest, *fees*, costs, or charges, the Consent Order only agrees to "post-petition interest and other costs and expenses" and does include the word *fees*.

27.     The Debtor did not agree within the Consent Order to payment of the Applicants' attorneys' fees and expenses; therefore, the court need not consider the Applicants' assertions that

11

the Debtor is precluded from opposing the Application under the doctrines of law of the case, equitable estoppel, quasi-estoppel, judicial estoppel, and waiver. Even if the Consent Order did qualify under § 506(b), the Consent Order suggests that allowance of the requested Fees would still be subject to "proper application and allowance by the Court," which logically includes the Debtor's right to object.

28. As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress amended § 506(b) to include the words "State statue." In accord with *Ron Pair*, this expansion of § 506(b) is also restricted by the clause "under which such claim arose," and there is no right to attorneys' fees for every oversecured creditor where applicable state law has a general fee statute. *In re Astle*, 364 B.R. 735, 740 (Bankr. D. Idaho 2007).

29. The Tax Judgments resulted from the Foreclosure Actions brought under N.C. Gen. Stat. § 105-374 titled "Foreclosure of tax lien by action in nature of action to foreclose a mortgage." The general nature of a foreclosure action under this statute is defined as follows:

> The foreclosure action authorized by this section *shall be instituted in the appropriate division of the General Court of Justice in the county in which the real property is situated* and shall be an action in the nature of an action to foreclose a mortgage."

N.C. Gen. Stat. § 105-374(a) (2006) (emphasis added).

30. The Applicants argue that N.C. Gen . Stat. § 105-374 is a "State statute" which authorizes allowance of its Fees under § 506(b), based upon the following provisions:

> Costs.--Subject to the provisions of this subsection (i), *costs may be taxed in any foreclosure action brought under this section* in the same manner as in other civil actions. . . .
>
> The word "costs," as used in this subsection (i), shall be construed to include *one reasonable attorney's fee* for the plaintiff in such amount as the court shall, in its discretion, determine and allow.

N.C. Gen. Stat. § 105-374(i) (2006) (emphases added).

12

31.     The court interprets N.C. Gen. Stat. § 105-374 to allow the trial court adjudicating a foreclosure action, that court being the Wayne County District Court with respect to the Foreclosure Actions, to award a determined amount for a singular attorney's *fee*. Each of the Tax Judgments awards the Applicants as part of its recovery an attorney's *fee* in the amount of $1,500.00. Nothing within the language of N.C. Gen. Stat. § 105-374 or the Tax Judgments allows for the Applicants to collect from AME or the Debtor its continuing attorneys' fees incurred post-judgment, and none of the North Carolina cases cited by the Applicants supports this conclusion. These cases simply recognize a state court adjudicating a foreclosure action under N. G. Gen. Stat. § 105-374 may within its discretion award recovery of an attorney's fee incurred by the taxing authority plaintiff. *See Town of Sylva v. Gibson*, 51 N.C. App. 545, 277 S.E.2d 115 (1981); *Guilford County v. Boyan*, 49 N.C. App. 430, 272 S.E.2d 1 (1980), *aff'd* 303 N.C. 311, 278 S.E.2d 252 (1981); *Keener v. Korn*, 46 N.C. App. 214, 264 S.E.2d 829 (1980).

32.     The doctrine of merger discussed *supra* dictates that the Tax Judgments are the basis for the Applicants' claim and not N.C. Gen. Stat. § 105-274. In North Carolina—

> [w]hen a plaintiff recovers a valid and final judgment, his or her original claim is extinguished and the rights granted pursuant to the judgment are substituted for it, and plaintiff's original claim is thus said to have "merged" with the judgment.

*Edwards v. Edwards*, 118 N.C. App. 464, 469-470, 456 S.E.2d 126, 129 (1995) (citing Restatement (Second) of Judgments § 18, Comment a (1982)). The Applicants' claims under N.C. Gen. Stat. § 105-374, including any right to an award for an attorney's fee under the statute, is merged into the final Tax Judgments; therefore, the Applicants' Claim arises from the Tax Judgments and not N.C. Gen. Stat. § 105-374. The Applicants even asserted in their Claim that it arose from "Tax Lien Judgments entered by Wayne County District Court."

33.     The Tax Judgments are non-consensual and do not represent either an agreement or State statute under which the Applicants' Claim arose that would support allowance of the Fees under § 506(b).  With this third required element of § 506(b) being unsatisfied, the court must deny the Application and need not assess the reasonableness of the Fees; now therefore,

IT IS ORDERED, ADJUDGED, AND DECREED that the Application be, and hereby is, denied.

**END OF DOCUMENT**